## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| John R. Wilson and Wilson Wolf Manufacturing Corporation, | Civil No. 13-210 (DWF/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Corning, Inc., | |
| Defendant. | |

___

Christopher A. Young, Esq., Devan V. Padmanabhan, Esq., Sri K. Sankaran, Esq., Tiffany A. Blofield, Esq., Paul J. Robbennolt, Esq., and Nadeem Schwen, Esq., Winthrop & Weinstine, PA, counsel for Plaintiffs.

Bradley R. Love, Esq., Jeff M. Barron, Esq., and Paul Bryan Hunt, Esq., Barnes & Thornburg LLP; Annamarie A. Daley, Esq., Jones Day; Cara A. Lawson, Esq., Howard I. Shin, Esq., Kimball R. Anderson, Esq., Linda T. Coberly, Esq., Paula W. Hinton, Esq., and Robine Kirsty Morrison, Esq., Winston & Strawn, LLP, counsel for Defendant.

___

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendant Corning, Inc. ("Corning") based on the intervening judgment of the U.S. Patent and Trial Appeal Board ("PTAB")[1] and a Motion to Strike the Declaration of John R. Wilson ("Wilson") also brought by Corning. (Doc. Nos. 498, 510.) In this

___

[1] The PTAB is an administrative law branch of the U.S. Patent and Trademark Office ("USPTO").

action, Plaintiffs Wilson and Wilson Wolf Manufacturing Corp. (together, "Wilson Wolf") assert claims against Corning for breach of contract, trade secret misappropriation, and correction of inventorship. On December 26, 2017, the PTAB issued a decision and judgment in an interference proceeding between Wilson and two Corning inventors invalidating claims 1-45 of Wilson's U.S. Patent No. 8,809,044 (the "'044 Patent"). (Doc. No. 501 ("Lawson Decl.") ¶¶ 1, 2, Ex. A ("PTAB Judgment"), Ex. B ("PTAB Decision").) Corning argues that the PTAB Decision is grounds for summary judgment in its favor on all of Wilson Wolf's claims because the concepts invalidated in the '044 Patent are the same alleged to constitute trade secrets and confidential information. Corning also argues that Wilson's declaration filed in opposition should be stricken. For the reasons discussed below, the Court denies Corning's motion for summary judgment and denies the motion to strike as moot.[2]

## BACKGROUND

The facts of this case have been set forth in detail in prior orders. In short, Wilson Wolf alleges that Corning obtained Wilson Wolf's cell culture technology under a confidentiality agreement (the "CDA") and then wrongfully used Wilson Wolf's technology to develop and commercialize its own products and to file for and obtain patents claiming Wilson Wolf's technology as its own. The claims remaining in this action include breach of contract, correction of inventorship with respect to three Corning

---

[2] The Court has reviewed Corning's recent submission of Federal Circuit authority and Wilson Wolf's response. (Doc. Nos. 529, 532.) The Court finds that the submitted authority does not relate to the elements of issue preclusion relevant to the present motion.

patents,[3] and trade secret misappropriation. Specifically, Wilson Wolf seeks to correct the inventorship of the '209, '345, and '572 Patents, arguing that at a minimum, Wilson Wolf contributed to the conception of one or more of the claims in the respective patents. In addition, Wilson Wolf argues that Corning breached the CDA by developing and commercializing Corning's HYPERFlask and HYPERStack products, as well as by filing the '209, '572, and '345 Patents. Finally, Wilson Wolf asserts a trade secret misappropriation claim related to novel and confidential platform cell culture technology that Wilson Wolf shared with Corning.

On December 26, 2017, the PTAB issued a final judgment in an interference action filed by Greg Martin and Allison Tanner[4] against Wilson with respect to the '044 Patent. Both sides were represented by counsel. The PTAB found claims 1-5, 7-10, 12-14, 16-20, 22, 23, 25, 26, 28-30, 39-42, 44, and 45 of the '044 Patent to be invalid as anticipated in view of U.S. Patent No. 6,759,245 (the "Toner Patent" or "Toner"). (PTAB Decision at 19.) In addition, the PTAB found the claims 6, 11, 15, 21, 24, 27, 31-32, 38, and 43 of the '044 Patent to be invalid as "obvious" in light of the combination of Toner Patent and a book by Professor R.I. Freshney, *Culture of Animal Cells: A Manual of Basic Technique* (Wiley-Blackwell, 4th ed. 2000) ("Freshney"). (PTAB Judgment at

---

[3]   These patents include U.S. Patent No. 7,745,209 (the "'209 Patent"); U.S. Patent No. 8,273,572 (the '572 Patent); and U.S. Patent No. 8,178,345 (the '345 Patent).

[4]   Tanner and Wilson were both Corning employees during the relevant time period. Tanner was a Product Development scientist; Wilson was a Senior Product Development Engineer.

2; PTAB Decision at 21; *see also* Lawson Decl. ¶ 4, Ex. D at App. 3-1, 3-3, 3-5.)

## DISCUSSION

### I. Summary Judgment

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009); *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). As the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

### II. Issue Preclusion

The doctrine of issue preclusion provides that "when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated

4

between the same parties and another lawsuit." *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1272 (8th Cir. 1997) (citation omitted). Issue preclusion prevents "repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." *Olsen v. Mukasey*, 541 F.3d 827, 831 (8th Cir. 2008) (citation omitted). In the Eighth Circuit, courts consider five factors to determine whether issue preclusion applies:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Anderson*, 128 F.3d at 1273. Regional circuit precedent applies to the analysis of issue preclusion, but Federal Circuit precedent applies to substantive issues of patent law. *See Kimberly-Clark Worldwide Inc. v. First Quality Baby Prods. LLC*, 135 F. Supp. 3d 850, 855 (E.D. Wis. 2015); *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).

Final decisions by a federal administrative agency are entitled to preclusive effect in a district court if the elements of issue preclusion are otherwise met. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) ("[I]ssue preclusion is not limited to those situations in which the same issue is before two *courts*. Rather, when a single issue is before a court and an administrative agency, preclusion also often applies.") (emphasis in original). However, as a threshold matter here, the parties dispute whether there has been a final judgment. Section 135 provides that no patent claim will

be cancelled via an interference proceeding (in a judgment adverse to a patentee) until there has been a final judgment from which no appeal or other review has been or can be taken:

> A final judgment adverse to a patentee from which no appeal or other review has been or can be taken or had shall constitute cancellation of the claims involved in the patent, and notice of such cancellation shall be endorsed on copies of the patent distributed after such cancellation by the Patent and Trademark Office.

35 U.S.C. § 135.[5]

Wilson Wolf argues that because it can and intends to appeal the PTAB Decision, there is no final judgment.[6] In support, Wilson Wolf cites to numerous cases for the proposition that PTAB decisions are not final for purposes of issue preclusion until appeals have been exhausted. *See, e.g.*, *Fresenious USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1334 (Fed. Cir. 2013) ("But there is no basis for distinguishing between the effects of a final, affirmed court decision determining invalidity and a *final affirmed* PTO decision determining invalidity on a pending litigation."[7]) (emphasis added); *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1358 (Fed. Cir. 2010) (noting in an ITC case

---

[5] The Court cites to the statute that was in effect on March 15, 2013, which is the version referenced by the PTAB and both parties. (*See* PTAB Judgment at 2.)

[6] On January 25, 2018, Wilson Wolf sought rehearing at the PTAB. (Doc. No. 527, Ex. 1.) On March 15, 2018, the request was denied. (*Id.*) Wilson Wolf represents that it will appeal the PTAB Decision to the U.S. Court of Appeals for the Federal Circuit. (Doc. No. 507 ("Wilson Decl.") ¶ 17.)

[7] The Court in *Fresenious* went on to explain that: "The latter is binding not because of collateral estoppel, but because Congress has expressly delegated reexamination authority to the PTO . . . to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on patents." *Id*. at 1344.

that despite a final rejection of patent claims in a reexamination, "it would be premature to give undue weight to the reexamination proceedings until or unless [the patentee] has exhausted its appeals"); *WesternGeco LLC v. ION Geophysical Corp.*, Civ. No. 09-1827, 2016 WL 2344347, at *10, *12 (S.D. Tex. May 4, 2016) (noting that cancellations of patent claims by the PTAB will not take effect until the time for appeal has expired or an appeal to the Federal Circuit terminated); *Meritor Transmission Corp. v. Eaton Corp.*, Civ. No. 04-178, 2006 WL 3951711, at *1 (W.D.N.C. Sept. 26, 2006), *aff'd* 258 F. App'x 320 (Fed. Cir. 2007) (explaining that the PTAB's judgment became final when the defendant chose not to appeal to the Federal Circuit); *In re Certain Three-Dimensional Cinema Sys. & Components Thereof*, 337-TA-939, 2016 WL 7635412, Comm'n Op. at *33  (Aug. 23, 2016) (noting the Federal Circuit's explanation of the binding effect of a final, affirmed PTO decision determining invalidity and cancellation of a patent claim); *In re Innovasystems, Inc.*, Civ. No. 11-36228, 2014 WL 7235527, at *5 (Bankr. D.N.J. Dec. 18, 2014) (holding that in the case of a PTAB decision "final appeals must be exhausted before [the finality factor] of the collateral estoppel test can be satisfied").

Despite the above authority, Corning argues that the PTAB Decision is final and preclusive.  First, Corning argues that Section 135 is only relevant to the "cancellation" of a patent, an administrative step that occurs only after appeals are exhausted.  Second, Corning points out that parties used to be able to seek *de novo* review of PTAB decisions on appeal and that Congress has since passed the Technical Corrections Act (TCA), Pub. L. 112-274, 126 Stat. 2456, eliminating *de novo* review.  *See Biogen MA, Inc. v. Japanese Found. for Cancer Research*, 785 F.3d 648, 656 (Fed. Cir. 2015) (explaining

7

that the impact of the TCA was to eliminate district court review of PTAB decisions pursuant to 35 U.S.C. § 146 (allowing *de novo* review)). Corning argues that without the availability of *de novo* review, an appeal of a PTAB decision does not undermine its preclusive effect. In support of this argument, Corning discusses *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1296-97 (Fed. Cir. 2014) and *B&B Hardware*, 135 S. Ct. at 1297. The Court, however, finds that these cases are either distinguishable or do not support Corning's position.

In *AbbVie Deutschland*, the Federal Circuit held that an interference decision was not entitled to preclusive effect in a district court action, noting that the statutory scheme at the time allowed for *de novo* review of PTAB decisions:

> [W]hen a party elects to seek review of a Board decision under § 146, the factual record remains open with respect to the issues contested at the PTO. Because a district court can make a *de novo* determination of facts upon the submission of new evidence, a Board decision that is reviewed under § 146 is not a "binding final judgment" to preclude a losing party from litigating the same or related issues in a parallel proceeding.

*Id.* at 1296-97. Corning suggests that *AbbVie Deutschland* not only stands for the proposition that a PTAB decision reviewed *de novo* is not a final judgment, but also that a PTAB decision can only be considered *not final* if *de novo* review is available. The Court disagrees. In fact, the Federal Circuit in *AbbVie Deutschland* explicitly stated that it was not addressing the issue that Corning suggests was established:

> Whether a Board's interference decision that is appealed under § 141 [providing for an appeal to the Federal Circuit] can have collateral estoppel effect on issues raised in a co-pending litigation is another question, one we need not address here.

*Id*. Therefore, *AbbieVie Deutschland* does not support a finding that the PTAB Decision here is final simply because the appeal does not involve *de novo* review.

In *B&B Hardware*, the Supreme Court held that a party in a trademark infringement action could be precluded from contesting a finding of a likelihood of confusion made by the Trademark Trial and Appeal Board (TTAB) when other elements of issue preclusion are met and the usages adjudicated by the TTAB are materially the same. 135 S. Ct. at 1297, 1310. However, in *B&B Hardware*, the party whose trademark the TTAB found unregisterable did not seek judicial review of the TTAB's decision, and the Supreme Court specifically noted the party's failure to do so in its decision. *Id*. at 1302 ("Despite a right to do so, [the party] did not seek judicial review in either the Federal Circuit or District Court."). Therefore, the Supreme Court did not directly address the preclusive effect of Board decisions that have been appealed. *Id*. at 1305 ("Ordinary preclusion law teaches that if a party to a court proceeding does not challenge an adverse decision, that decision can have preclusive effect in other cases, even if it would have been reviewed *de novo*."). In that regard, *B&B Hardware* is distinguishable from this case because Wilson Wolf intends to appeal the PTAB Decision.

At least one other court has distinguished *B&B Hardware* on the ground that there was no appeal taken in *B&B Hardware*. In particular, in *Hanginout, Inc. v. Google, Inc.*, the court considered a motion to stay a trademark infringement case pending opposition

9

proceedings before the TTAB where the party seeking the stay relied on *B&B Hardware* as support for deference to the TTAB decision. Civ. No. 13-2811, 2015 WL 11254689, at *3 (S.D. Cal. June 3, 2015). The court in *Hanginout*, however, explained:

> The holding of *B&B* however, is not as far-reaching as Plaintiff contends. *B&B* involved the application of issue preclusion in the context of trademark law and TTAB opposition proceedings. . . . Because the TTAB decision in *B&B* was not appealed, the Supreme Court resorted to general principles of issue preclusion in reaching its holding. Plaintiff reads *B&B* to support the conclusion that any decision by the TTAB would be binding on issues pending before this Court. Such reliance neglects to account for the appeal mechanism available to a party unsatisfied with a TTAB decision. . . . *Whether any decision of the TTAB would be binding on this Court . . . depends on whether that decision will be appealed.*

*Id*. (emphasis added)(citations omitted).

As noted above, in this case, Wilson Wolf is still able and intends to appeal the PTAB Decision. The Court finds that the weight of authority supports the conclusion that the PTAB Decision is not final for purposes of issue preclusion because the appellate process has not played out. For this reason, the Court denies Corning's motion for summary judgment.

### III. Motion to Strike

Corning also moves to strike the Declaration of John R. Wilson filed in Opposition to Corning's motion for summary judgment. Corning argues that the declaration should be stricken because Wilson Wolf used the declaration to get around the Court's word limit, Wilson engages in improper argument, and the declaration is, in essence, a supplemental expert report and therefore violates the scheduling order. Because the

Court denies Corning's motion for summary judgment, the motion to strike is denied as moot.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Corning's Motion for Summary Judgment Based on the Intervening PTAB Judgment (Doc. No. [498]) is **DENIED**.

2. Corning's Motion to Strike (Doc. No. [510]) is **DENIED** as moot.

Dated: May 25, 2018              s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge