UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John R. Wilson and Wilson Wolf Manufacturing Corp., | Civil No. 13-210 (DWF/TNL) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Corning Incorporated, | |
| Defendant. | |

Devan V. Padmanabhan, Esq., Michelle E. Dawson, Esq., Sri K. Sankaran, Esq., and Paul J. Robbennolt, Esq., Padmanabhan & Dawson, PLLC, counsel for Plaintiffs.

Kimball R. Anderson, Esq., Linda T. Coberly, Esq., Ivan Poullaos, Esq., Paula W. Hinton, Esq., and Robine K. M. Grant, Esq., Winston & Strawn LLP; Paul B. Hunt, Esq. and Jeff M. Barron, Esq., Barnes & Thornburg, LLP; and Annamarie Daley, Esq., Jones Day, counsel for Defendant.

## INTRODUCTION

This matter is before the Court on a Renewed Motion for Summary Judgment based on the intervening judgment of the U.S. Patent and Trial Appeal Board ("PTAB")[1] brought by Defendant Corning Inc. ("Corning" or "Defendant"). (Doc. No. 578.) In this action, Plaintiffs Wilson ("Wilson") and Wilson Wolf Manufacturing Corp. ("Wilson Wolf") (collectively, "Plaintiffs") assert claims against Corning for breach of contract, trade secret misappropriation, and correction of inventorship. On December 26, 2017,

---

[1] The PTAB is an administrative law branch of the U.S. Patent and Trademark Office ("USPTO").

the PTAB issued a decision and judgment in an interference proceeding between Wilson and two Corning inventors invalidating claims 1-45 of Wilson's U.S. Patent No. 8,809,044 (the "'044 Patent"). (Doc. No. 581-1 ("PTAB Decision"); Doc. No. 581-2 ("PTAB Judgment").) With the conclusion of Wilson Wolf's Federal Circuit appeal, the PTAB Decision is now final. (Doc. No. 581-5.)

Corning argues that the PTAB Decision is grounds for summary judgment in its favor on all of Wilson Wolf's claims because the concepts invalidated in the '044 Patent are the same alleged to constitute trade secrets, confidential information, and the basis of Wilson's inventorship claims. For the reasons discussed below, the Court denies Corning's motion for summary judgment.

## BACKGROUND

The factual background for the above-entitled matter is clearly and precisely set forth in the Court's March 22, 2016 Memorandum Opinion and Order and is incorporated by reference herein. (*See* Doc. No. 388.) The facts relevant to this order are discussed below and supplemented as necessary. Wilson is the founder and CEO of Wilson Wolf. Wilson Wolf is a biotechnology firm that develops and manufactures cell-culture devices. Corning is a multi-national corporation that operates several divisions in areas of technology, including life sciences, display technologies, and environmental technologies. Plaintiffs allege that Corning obtained Plaintiffs' cell-culture technology under a confidentiality agreement and that Corning subsequently developed products using Plaintiffs' technology as its own. (Doc. No. 1 ("Compl.") ¶¶ 125-40.)

Plaintiffs contend that they shared confidential information and prototypes containing information about their technology with Corning and that Corning evaluated this information for the potential development of cell-culture devices. Plaintiffs also contend that the information that they shared was reflected in: U.S. Provisional Patent Application No. 60/509,651 (the "'651 Provisional Application"); U.S. Provisional Patent Application No. 60/873,347 (the "'347 Provisional Application"); U.S. Patent Application No. 10/961,814 (the "'814 Patent Application"); and a Small Business Innovation Research ("SBIR") grant application filed with the National Institute of Health ("NIH"). (Doc. No. 1, ¶¶ 28, 59.) Plaintiffs allege that Corning was most interested in a multi-layered flask with multiple, vertically stacked cell-culture shelves and gas permeable membranes. (Compl. ¶ 56.)

On December 26, 2017, the PTAB entered a decision regarding Gregory Roger Martin's[2] motions for judgment that the '044 Patent was invalid under 35 U.S.C. §§ 102 and 103. The PTAB found that U.S. Patent No. 6,759,245 to Toner ("Toner") anticipated claims 1-5, 7-10, 12-14, 16-20, 22, 23, 25, 26, 28-30, 33-37, 39-42, 44, and 45 of the '044 Patent. (PTAB Decision at 12, 20 (claim 1); *id*. at 19 (claims 1-5,7-10, 12-14, 16-20, 22, 23, 25, 26, 28-30, 33-37, 39-42, 44, and 45)).) The PTAB further found that claim 31 of the '044 Patent would have been obvious over Toner. (PTAB Decision at 20.) Finally, the PTAB found that claims 6, 11, 15, 21, 24, 27, 32, 38, and 43 would have

---

[2]   During the proceeding, Martin represented that its real party in interest was Corning Inc. (PTAB Decision at 5.)

been obvious over Toner in view of a book by Professor R.I. Freshney, *Culture of Animal Cells: A Manual of Basic Technique* (Wiley-Blackwell, 4th ed. 2000) ("Freshney"). (PTAB Decision at 21.) The PTAB subsequently entered a judgment cancelling claims 1-45 of the '044 Patent. (PTAB Judgment at 2.)

Wilson Wolf sought rehearing at the PTAB, but Wilson's request was denied. (Doc. No. 527-1.) Wilson Wolf subsequently appealed the PTAB Decision to the U.S. Court of Appeals for the Federal Circuit. (Doc. No. 581-5.) The Federal Circuit rejected Wilson Wolf's appeal. (Doc. No. 581-5.)

## **DISCUSSION**

### I.     **Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009); *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). As the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

## II.     Issue Preclusion

The doctrine of issue preclusion provides that "when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties and another lawsuit." *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1272 (8th Cir. 1997) (citation omitted). Issue preclusion prevents "repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." *Olsen v. Mukasey*, 541 F.3d 827, 831 (8th Cir. 2008) (citation omitted). In the Eighth Circuit, courts consider five factors to determine whether issue preclusion applies:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Anderson*, 128 F.3d at 1273. Regional circuit precedent applies to the analysis of issue preclusion, but Federal Circuit precedent applies to substantive issues of patent law. *See Kimberly-Clark Worldwide Inc. v. First Quality Baby Prods. LLC*, 135 F. Supp. 3d 850, 855 (E.D. Wis. 2015); *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).

5

Final decisions by a federal administrative agency are entitled to preclusive effect in a district court if the elements of issue preclusion are otherwise met. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) ("[I]ssue preclusion is not limited to those situations in which the same issue is before two *courts*. Rather, when a single issue is before a court and an administrative agency, preclusion also often applies.") (emphasis in original).

The parties agree that the first, fourth, and fifth elements of issue preclusion have been satisfied in this case. Defendant argues that only the second element is in dispute. (Doc. No. 580 ("Def. Memo.") at 12.) Defendant argues that the second element is satisfied because the issues the PTAB decided are the same as the issues remaining in this case. (*Id*. at 13.) Plaintiffs argue that neither the second element nor the third element has been satisfied. (Doc. No. 585 ("Pl. Opp.") at 8-10.) Plaintiffs argue that the second element is not satisfied because Plaintiffs' alleged trade secrets and Confidential Information go beyond the information disclosed in the '044 Patent. (*Id*. at 8-9.) Plaintiffs argue that the third element is not satisfied because the only issue "actually litigated" before the PTAB was whether Toner disclosed the "ambient gas" limitation. (*Id*. at 10.) Defendant counters that all claim limitations of the '044 Patent were addressed by the PTAB. (Doc. No. 597 ("Reply") at 9-10.)

For the reasons discussed below, the Court finds that even if issue preclusion applied, there are numerous issues of material fact that preclude summary judgment on Plaintiffs' claims. Accordingly, the Court finds that it does not need to decide whether issue preclusion applies.

## A. Breach of Contract

In Count IV, Plaintiffs assert a claim for breach of contract. (Compl. ¶¶ 125-35.) To prevail on a breach-of-contract claim, a plaintiff must show that a defendant breached a term of a contract and that they were damaged by that breach. *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 920 (8th Cir. 2013). "[U]nder Minnesota law, '[a] breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach.'" *Id.* (citation omitted).

On January 6, 2004, the parties entered into a Confidential Disclosure Agreement ("CDA"). (Compl. ¶ 41, Ex. C ("CDA").) The CDA permitted "exchanges of information which may be confidential for the purpose of enabling [Plaintiffs] to provide design, engineering or other services for Corning." (CDA, ¶ 8.) Specifically, the CDA stated that:

> "Confidential Information" shall mean only that information relating to selling, inventing, and developing cell culture devices and processes for growing cells . . . and information relating to expertise in inventing and developing cell culture devices and processes for growing cells . . . .

(*Id.* ¶ 1.) Under the CDA, once Confidential Information was disclosed, it was to be treated as Confidential for five years from the date of disclosure. (*Id.* ¶ 3) The party receiving Confidential Information was required to limit the dissemination of Confidential Information, protect Confidential Information, and not use Confidential Information for any purpose other than expressed purposes. (*Id.*) The CDA also covered how a party should treat information disclosed as Confidential when that party believed the information is not actually confidential; for example, in situations where information

7

designated Confidential was developed by the receiving party by employees not exposed to Confidential Information or was publicly available.  (*Id*. ¶ 4 (a)-(d).)  Even so, in such a situation, the receiving party could not use or disclose any Confidential Information "without first notifying the other party in writing of its intended reliance [on any of the foregoing exemptions] at least fourteen (14) days in advance of use or disclosure."  (*Id*.)

Corning previously moved for summary judgment on Plaintiffs' breach of contract claim.  (*See* Doc. No. 391.)  In the Court's March 29, 2017 Order, the Court found that issues of material fact precluded summary judgment, including whether a breach of the CDA had occurred based on the alleged misuse of Confidential Information that led to Corning's development of the HYPER*Flask* and HYPER*Stack* products and whether Corning's allegedly unauthorized use or disclosure of Confidential Information contributed or led to the development of the HYPER*Flask* and HYPER*Stack* products.  (Doc. No. 461 at 10.)  Thus, the Court denied Corning's motion for summary judgment on Plaintiffs' breach of contract claim.  (*Id*.)

Corning argues that the PTAB's judgment disposes of Wilson Wolf's breach of contract claim for two reasons:  (1) it establishes that the information was publicly available and that Wilson did not invent it, so it could not possibly meet the contractual definition of "Confidential Information," and (2) because Wilson's alleged information was already in the public domain at the time of its disclosure, Plaintiffs cannot possibly establish that they suffered any damages as a result of a breach. (Def. Memo. at 16.)  Corning argues that "the PTAB held—as a matter of *fact*—that the concepts that Wilson

Wolf calls 'Confidential' do not meet the definition in the CDA's Paragraph 1." (*Id*. at 20 (emphasis in original).)

Wilson Wolf responds that the PTAB's judgment has no impact on Wilson Wolf's breach of contract claim. (Pl. Opp. at 23.) Wilson Wolf argues that the PTAB judgment only decided issues related to federal patent law issues of obviousness and anticipation—not interpretation of the CDA. (*Id*.) Wilson Wolf argues that the definition of "Confidential Information" under the CDA is not synonymous with patentability. (*Id*. at 24-25.) Moreover, Wilson Wolf argues that the CDA does not turn on whether information is patent-eligible, but rather whether proper notice was given under the terms of the CDA. (*Id*.) Wilson Wolf also argues that the invalidation of a patent does not preclude a breach of contract claim where, as is the case here, a party disclosed "implementation details and techniques that went beyond the information disclosed in the patent." (*Id*. at 30-31 (quoting *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1358-59 (Fed. Cir. 1998).) Wilson Wolf further argues that genuine issues of material fact remain regarding damages, including whether the allegedly Confidential Information "led to, motivated, facilitated, and/or contributed to Corning's development and launch of its HYPER products." (Pl. Opp. at 36.)

Despite Corning's arguments in favor of summary judgment, the Court finds that Corning overstates the findings of the PTAB decision. While Corning argues that the PTAB decision established that the information Wilson Wolf claims was confidential under the CDA "could not possibly meet the contractual definition of 'Confidential Information,'" the Court disagrees. (Def. Memo. at 16.) As discussed above, the Court

9

finds that the PTAB decision merely found that claims of the '044 Patent were either anticipated by Toner or rendered obvious by Toner in view of Freshney. This finding, along with the underlying factual findings, leaves issues of material fact unresolved.

The Court first observes that the PTAB Decision does not address whether the information in the now-invalidated '044 Patent qualifies as "Confidential Information" under the CDA. As Plaintiffs note, "nothing in the Confidentiality Agreement requires Confidential Information to be patented or patentable." (Pl. Opp. at 20.) Instead, the CDA defines "Confidential Information" as "information relating to expertise in inventing and developing cell culture devices and processes for growing cells." (CDA ¶ 1.) Viewing the record in the light most favorable to Wilson Wolf, the Court finds that there is an issue of material fact regarding whether the information in the now-invalidated '044 Patent qualifies as "Confidential Information" under the CDA.

Second, the Court finds that the PTAB Decision does not address whether the information in the now-invalidated '044 Patent is synonymous with the information disclosed in the '651 Provisional Application and the '814 Patent Application. As Wilson Wolf correctly notes, the '651 Provisional Application and the '814 Patent Application are not a part of the same patent family as the now-invalidated '044 Patent. (Pl. Opp. at 12-13; *see also* Doc. No. 504-1, Ex. 1 (the '044 Patent); Doc. No. 504-1, Ex. 4 (the '651 Provisional Application); Doc. No. 501-1, Ex. H (the '814 Patent Application).) Separate patents "describe 'separate and distinct [inventions],' and it can not be presumed that related patents rise and fall together." *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1539 (Fed. Cir. 1995); *see also Kearns v. Gen.*

*Motors Corp.*, 94 F.3d 1553, 1556 (Fed. Cir. 1996) ("[E]ach patent, by law, covers a[n] independent and distinct invention."). While this Court previously noted that there may be "significant overlap" between the issues actually decided by the PTAB and the issues remaining in this case, (Doc. No. 560 at 5), the degree of such overlap—in particular, the degree to which the inventions disclosed in the '044 Patent overlap with the inventions disclosed in the '651 Provisional Application and the '814 Patent Application—is in dispute. Because Corning does not explain how the invention in the '044 Patent "can be identical" to the inventions in the '651 Provisional Application and the '814 Patent Application "when they include different elements and therefore, presumably teach different inventions," the Court finds that the record does not currently support a lack of dispute regarding the overlap. *Callicrate v. New Age Indus. Corp.*, Civ. No. 04–4008–JAR, 2005 WL 1027095, at *21 (D. Kan. Apr. 27, 2005). Viewing the record in the light most favorable to Wilson Wolf, the Court finds that there is an issue of material fact as to whether the inventions described in the '651 Provisional Application and the '814 Patent Application disclose information that "went beyond the information disclosed in the ['044 Patent]." *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1358 (Fed. Cir. 1998).

Third, even if there were no dispute on the two issues identified above, the Court finds that the PTAB Decision did not resolve whether Corning allegedly breached the CDA when it failed to notify Wilson Wolf that Corning intended to rely on the publicly-available exception under Paragraph 4 of the CDA. Viewing the record in the light most favorable to Wilson Wolf, the Court finds that there is an issue of material fact as to

whether Corning's alleged failure to notify Wilson Wolf under Paragraph 4 of the CDA was a breach of the CDA.

Fourth, the Court finds that the PTAB Decision does not address whether Corning's alleged use of Confidential Information contributed or led to the development of the HYPER*Flask* and HYPER*Stack* products.  As this Court previously found, "there is sufficient evidence in the record that alleged improper use of Confidential Information before April 2005 facilitated the launch of [Corning's] HYPER*Flask* and HYPER*Stack* products."  (Doc. No. 461 at 10.)  The Court finds that the PTAB Decision does not materially alter this conclusion.

Even assuming issue preclusion applies and viewing the record in the light most favorable to Wilson Wolf, the Court concludes that there are numerous issues of material fact that preclude summary judgment on Wilson Wolf's Breach of Contract claim.  These factual issues include disputes as to whether the information in the now-invalidated '044 Patent qualifies as "Confidential Information" under the CDA, whether the information in the '044 Patent is synonymous with the information disclosed in the '651 Provisional Application and the '814 Patent Application, whether Corning's alleged failure to provide Wilson Wolf notice under Paragraph 4 of the CDA was a breach of the CDA, and whether Corning's alleged use of Confidential Information contributed or led to the development of the HYPER*Flask* and HYPER*Stack* products.  These factual disputes were neither before the Board nor decided by the Board.  Based on these significant factual disputes, the Court finds that summary judgement in favor of Corning on Wilson

Wolf's breach of contract claim is improper. Accordingly, the Court denies Corning's motion as to this claim.

### B.     Misappropriation of Trade Secrets

In Count VI, Plaintiffs assert a claim for trade secret misappropriation. (Compl. ¶¶ 141-63.) Minnesota's Trade Secrets Act requires that a party seeking protection show both the existence and the misappropriation of a trade secret. *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897 (Minn. 1983). In order for information to be considered a "trade secret," Plaintiffs must establish that: (1) the information is not generally known or ascertainable; (2) the information derives independent economic value from secrecy; and (3) they made reasonable efforts to maintain the information's secrecy. *Id*. at 899-901.

Corning previously moved for summary judgment on Plaintiffs' trade secret misappropriation claim. (*See* Doc. No. 391.) In the Court's March 29, 2017 Order, the Court concluded that Plaintiffs had presented sufficient evidence to establish a genuine issue of material fact with respect to the existence of and misappropriation of the alleged trade secrets. (Doc. No. 461 at 14.) The Court concluded that Plaintiffs had sufficiently identified the features that, in combination, could constitute trade secrets, but limited Plaintiffs' alleged trade secrets to the alleged trade secrets disclosed in Plaintiffs' original and supplementary interrogatory responses.[3] (*Id.*)

---

[3]     Corning argues that Plaintiffs are "attempt[ing] to avoid summary judgment by pointing to claims and allegations never pleaded in this case." (Reply at 1.) As the Court noted in its March 29, 2017 Order, however, alleged trade secrets disclosed in Plaintiffs'

13

Corning argues that the PTAB Decision "establishes as a matter of law that Plaintiffs' alleged trade secrets never existed." (Def. Memo. at 14.) Corning argues that the alleged trade secrets are "subsumed" in the now-invalidated '044 Patent. (*Id.*) Corning argues that the '347 Provisional Application includes both the "basic concepts" of the alleged trade secrets "as contained in Wilson's '651 application" and "the devices described in [Wilson's] SBIR application." (*Id.*) Corning argues that Plaintiffs "cannot re-litigate in this action the issue of whether the allegedly inventive ideas in their patent applications constitute trade secrets." (*Id.* at 16.) Finally, Corning argues that Plaintiffs cannot rely on previously identified combinations because Plaintiffs did not list such combinations in the Complaint. (Reply at 14-15.)

Plaintiffs argue that the PTAB Decision does not preclude Plaintiffs' misappropriation of trade secrets claim because information does not have to rise to the level of patentability to be protected under Minnesota's trade secret laws. (Pl. Opp. at 27.) Plaintiffs argue that there are differences between federal patent law and Minnesota trade secret law and that, in particular, the PTAB Decision did not consider whether Wilson's trade secret combinations were "generally known" under Minnesota trade secret law. (*Id.* at 30.) Plaintiffs also argue that its trade secret combinations "are different than the '044 Patent claims and include many features not found in the '044 patent claims." (*Id.* at 37.)

---

original and supplementary interrogatory responses are properly a part of this case. (Doc. No. 461 at 14.)

Even assuming issue preclusion applies and viewing the record in the light most favorable to Wilson Wolf, the Court concludes that there are numerous issues of material fact that preclude summary judgment on Wilson Wolf's Misappropriation of Trade Secrets claim.  These factual issues include disputes as to whether the information and combinations Plaintiffs allege to be trade secrets are identical to the information disclosed in the now-invalidated '044 Patent, whether the fact that Toner discloses each and every limitation of certain claims in the '044 Patent means the information in such claims were "generally known," and whether the fact that that Toner in combination with Freshney rendered certain claims of the '044 Patent obvious means the information in such claims were "generally known."  These factual disputes were neither before the Board nor decided by the Board.  Based on these significant factual disputes, the Court finds that summary judgement in favor of Corning on Wilson Wolf's misappropriation of trade secrets claim is improper.  Accordingly, the Court denies Corning's motion as to this claim.

      **C.**     **Correction of Inventorship**

In Counts I, II, and III of the Complaint, Plaintiffs assert claims for Declaratory Judgment of Invalidity, or Correction of Inventorship Regarding the '209 Patent (Compl. ¶¶ 101-12.)  "Patent issuance creates a presumption that the named inventors are the true and only inventors."  *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).  Omitted co-inventors "must prove their contribution to the conception of the claims by clear and convincing evidence."  *Id*. at 1461.  Because conception is the touchstone of inventorship, each inventor must generally contribute to the conception of

15

the invention. *Id.* at 1460. Conception is complete when "the idea is so clearly defined in that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (citation omitted).

> A joint invention is the product of a collaboration between two or more persons working together to solve the problem addressed. People may be joint inventors even though they do not physically work on the invention together or at the same time, and even though each does not make the same type or amount of contribution. The statute does not set forth the minimum quality or quantity of contribution required for joint inventorship.

*Id.* at 1227 (citations omitted). A person is not an alleged inventor when he "simply provide[d] the inventor with well-known principles or explain[ed] the state of the art." *Ethicon*, 135 F.3d at 1460. Further, courts require corroborating evidence of conception. *Id.* at 1228. While "[i]nventorship is a question of law," it is "based on underlying facts." *Univ. of Pittsburgh v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009) (citation omitted).

Corning previously moved for summary judgment on Plaintiffs' claims for sole inventorship. (*See* Doc. No. 391). In the Court's March 29, 2017 Order, the Court concluded that a proper construction of the term "continuous flow" would assist a determination of the inventorship of the '209 Patent and that fact issues remained as to the inventorship of the '572 Patent. (Doc. No. 461 at 18.)

Corning argues that the PTAB Decision "establishes that the concepts disclosed by Wilson were already known in the art at the time," (Def. Memo. at 20-21), and that "the concepts in the '651 provisional application were not inventive," (*id.* at 22). Corning argues that the Complaint "explicitly identifies what Plaintiffs say Wilson contributed to

16

Corning's patents—that is, the idea of 'a multiple shelf cell culture device with each shelf having a gas permeable floor exposed to the atmosphere,' which Wilson contends is 'the same flask previously conceived by John Wilson.'" (*Id*. at 21.)

Plaintiffs allege that the '896 Provisional Application and '522 Provisional Application use information previously taught in Wilson Wolf's '651 Provisional Application.[4] (Compl. ¶¶ 84-85, 90-91.) Instead, Plaintiffs argue that Wilson's alleged contributions to the Corning patents "go beyond" the now-invalidated '044 Patent. (Pl. Opp. at 40.) Such contributions include the vertical bag, the '651 Provisional Application, and other information. (*Id*. at 40.) For support, Plaintiffs point to Wilson's declaration that states that Wilson conceived of the subject matter of claim 16 of the '209 Patent before Martin and Dr. Tanner, that the subject matter of claim 16 is recited in the '651 Provisional Application, that Wilson's conception of the claimed element is established by Wilson Wolf's vertical bag prototypes, and that Wilson provided the '651 Provisional Application and vertical bag prototypes to Corning. (*Id*. at 40 (citing Doc. No. 388 at 18).)

Even assuming issue preclusion applies and viewing the record in the light most favorable to Wilson Wolf, the Court concludes that there are numerous issues of material fact that preclude summary judgment on Wilson Wolf's Correction of Inventorship claim. These factual issues include disputes as to whether the information in the '044 Patent is

---

[4] The '896 Provisional Application resulted in the issuance of U.S. Patent No. 7,745,209 and U.S. Patent No. 8,273,572. The '522 Provisional Application resulted in the issuance of U.S. Patent No. 8,178,345.

synonymous with the information disclosed in the '651 Provisional Application and the '814 Patent Application, whether the information disclosed in the '651 Provisional Application and the '814 Patent Application was inventive, and whether the information Plaintiffs disclosed to Corning contributed to the Corning patents.  These factual disputes were neither before the Board nor decided by the Board.  Based on these significant factual disputes, the Court finds that summary judgement in favor of Corning on Wilson Wolf's correction of inventorship claim is improper.  Accordingly, the Court denies Corning's motion as to this claim.

## **ORDER**

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Corning's Renewed Motion for Summary Judgment Based on Final Intervening PTAB Judgment (Doc. No. [579]) is **DENIED**.

Dated:  June 17, 2020               s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge