UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John R. Wilson and Wilson Wolf Manufacturing Corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>Corning, Inc.,<br><br>        Defendant. | Civil No. 13-210 (DWF/TNL)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**INTRODUCTION**

This matter is before the Court on a Motion to Strike Plaintiffs John R. Wilson and Wilson Wolf Manufacturing Corporation's (together, "Plaintiffs" or "Wilson Wolf") Jury Demand brought by Defendant Corning Inc. ("Corning"). (Doc. No. 636.) For the reasons set forth below, the Court grants the motion.

**BACKGROUND**

The facts of this case have been thoroughly recited in prior orders. In short, Plaintiffs allege that Corning obtained Wilson Wolf's cell-culture technology under a confidentiality agreement (the "CDA") and then wrongfully used that technology to develop and commercialize its own cell-culturing products (i.e., the HYPERFlask and HYPERStack products) and to file for and obtain patents claiming Wilson Wolf's technology as its own. The claims remaining in this action include trade secret misappropriation, breach of contract, and correction of inventorship with respect to certain

Corning patents. The parties dispute whether a right to a jury trial exists with respect to the remaining claims or whether these claims should instead be tried to the bench.

## DISCUSSION

A right to a trial by jury stems from a statute or the Seventh Amendment to the United States Constitution. Fed. R. Civ. P. 38(a). The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury shall be preserved . . . ." U.S. Const. amend. VII. The Supreme Court has held that the Seventh Amendment requires "a jury trial on the merits in those actions that are analogous to 'Suits at common law.'" *Tull v. United States*, 481 U.S. 412, 417 (1987). "Suits at common law" are suits in which legal rights are to be ascertained and determined, in contrast to suits in which equitable rights alone are recognized, and equitable remedies are administered. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989); *see also City of Monterey v. Del Monte Dunes, Ltd.*, 526 U.S. 687, 719 (1999) (holding that "[i]t is settled law that the Seventh Amendment does not apply" in "suits seeking only injunctive relief" or suits seeking only equitable relief). Courts use a two-prong test to determine whether a party who is seeking to enforce a right is entitled to a jury trial under the Seventh Amendment. *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 968 (8th Cir. 2005) (citing *Tull*, 481 U.S. at 417-18). First, courts "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* (quoting *Tull*, 481 U.S. at 417-18). Second, courts "examine the remedy sought and determine whether it is legal or equitable in

nature." *Id.* The second step carries greater weight. *Id.* Below, the Court considers whether Plaintiffs are entitled to a jury trial on each remaining claim.

### A. Trade Secret Misappropriation

In Count VI, Wilson Wolf alleges that Corning misappropriated its trade secrets by including them in patent applications it filed beginning in July 2005. (Doc. No. 1 ¶¶ 155-161.) In an order dated March 22, 2016, the Court dismissed Count VI with prejudice insofar as the claim is based on misappropriation after April 21, 2005, the date Wilson's U.S. Patent Application No. 10,961,814 was published.[1] The remedies that Wilson Wolf seeks for trade secret misappropriation include the amount of money to which Corning was unjustly enriched in the form of the disgorgement of all or a percentage of Corning's revenues and/or profits earned on its HYPERFlask and HYPERStack products. Wilson Wolf acknowledges that it seeks unjust enrichment damages based on the amount by which Corning was enriched by its misappropriation of trade secrets but submits that it also seeks compensatory damages for the alleged misappropriation based on the transaction that Wilson Wolf and Corning would have entered into absent the alleged misappropriation.

Wilson Wolf opposes Corning's motion, arguing that its trade secret misappropriation claims brought under the Minnesota Uniform Trade Secrets Act

---

[1] The Court found that Wilson Wolf could not proceed on any claim of trade secret misappropriation "separate from the information disclosed in the patents." (Doc. No. 388 at 26.) The information was no longer secret when the patent application was published. (*Id.*)

("MUTSA") are legal in nature and entitled to a jury trial.  Wilson Wolf also argues that, even if its claims were under common law, Corning's motion should be denied because while common law claims seeking remedies based on profits may be considered equitable when their aim is to punish a defendant, damages claims based on profits are legal in nature when a defendant's profits are evidence of a plaintiff's losses.  Wilson Wolf argues that its compensatory damages are legal in nature because they are based on the agreement that it would have entered into with Corning had Corning paid Wilson Wolf for the technology.[2]

The Court has carefully reviewed the record and considered the parties' respective arguments.  Both categories of asserted damages (unjust enrichment and compensatory damages) related to Wilson Wolf's trade secret misappropriation claim are measured by Corning's actual and projected revenues and/or profits on its HYPERFlask and HYPERStack products, as well as projected revenues and/or profits from the sales of products that Wilson Wolf asserts are sold in conjunction with those products.  (*See generally* Doc. No. 641, Ex. C ("Ludington Rep.") ¶ 218.)[3]  Specifically, the unjust enrichment damages are calculated using Corning's actual and projected revenues and

---

[2] Wilson Wolf also argues that, in its March 29, 2017 Order on a Daubert motion, the Court acknowledged that Wilson Wolf's claim is legal, not equitable.  (See Doc. No. 461 at 25-26.)  However, the Court notes that the issue of the right to a jury trial was not previously before the Court and the Court is not constrained by the prior ruling.

[3] It appears that Wilson Wolf's "compensatory damage" calculation equals the disgorgement of 50% of Corning's profits.  In addition, Wilson Wolf does not assert any lost profits or expectation damages separate from the disgorgement calculation.

profits, and for the asserted compensatory damages, Wilson Wolf divides these calculations in half, thereby asserting damages in the amount of 50% of Corning's profits. All of these asserted damages, regardless of how they are labeled, are equitable in nature. *See, e.g.*, *Nat'l Presto Indus., Inc. v. U.S. Merchs. Fin. Grp., Inc.*, Civ. No. 18-3321, 2021 WL 5083934, at *2-3 (D. Minn. Nov. 2, 2021) (finding disgorgement of profits in Lanham Act case is not triable by a jury; explaining that most courts consider a claim for disgorgement of an infringer's profits as an equitable claim for which the Seventh Amendment does not guarantee a right to a jury trial) (collecting cases)); *Fair Isaac Corp. v. Fed. Ins. Co.*, 408 F. Supp. 3d 1019, 1033 (D. Minn. 2019) (finding disgorgement of profits in copyright case is an equitable remedy not entitled to a jury determination).[4] Under the weight of authority under federal law, the equitable remedy of

---

[4] Wilson Wolf asserts that its damage theory actually represents compensatory damages. The Court disagrees and respectfully rejects this argument for the same reasons articulated in National Presto:

> [Plaintiff] attempts to circumvent this case law by arguing that disgorgement is considered a legal claim when the infringer's profits serve as a "proxy" for the plaintiff's damages. But [Plaintiff's] claim for disgorgement does not actually serve as a proxy for its damages. To be sure, some evidence suggests that [Plaintiff] would have been Costco's exclusive supplier of [some products], and thus the sales that [Defendant] achieved are roughly indicative of the sales [Plaintiff] would have achieved. However, the profits [Defendant] attained are unrelated to the profits [Plaintiff] would have earned. If [Plaintiff] were seeking compensation, rather than restitution and unjust enrichment, it could have argued that it suffered actual damages in the form of lost profits—supported by expert testimony analyzing [Defendant's] sales data to quantify [Plaintiff's] lost sales. [Plaintiff] has not attempted to present such evidence, however. Consequently, its disgorgement claim seeks equitable relief.

disgorgement is not a remedy for which the Seventh Amendment guarantees a right to trial by jury. *See, e.g., Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, (Fed. Cir. 2018) (holding that there was no right to a jury decision on a request for disgorgement of profits as a remedy for trade secret misappropriation); *Nat'l Presto*, Civ. No. 18-3321, 2021 WL 5083934, at *3 (citing cases); *Fair Isaac Corp.*, 408 F. Supp. 3d at 1027-28 ("Moreover, in other seemingly analogous areas of intellectual property–patent and trademark infringement and trade secret misappropriation–judges and scholars have tended to find that disgorgement remedies were the province of equity and not for a jury.") (citing cases).[5] Accordingly, the Court concludes that Wilson Wolf's trade secret misappropriation claim is an equitable claim for which no right to a jury trial exists.

B.  **Breach of CDA**

In Count IV, Wilson Wolf alleges that Corning breached the CDA by developing, commercializing, and filing patent applications related to its own cell-culturing flask technology. (Compl. ¶ 128.) This claim is closely related to Wilson Wolf's trade secret

---

2021 WL 5093934, at *3. Notably, Wilson Wolf has not disclosed or quantified lost profits or expectation damages stemming from Corning's alleged trade secret misappropriation.

[5]  Wilson Wolf argues that trade secret claims that are based on state statutes modeled on the Uniform Trade Secrets Act ("UTSA"), such as MUTSA, are legal claims entitled to a jury trial, no matter the damages sought. (Doc. No. 654 at 1.) The Court disagrees. Federal law controls the Seventh Amendment right to a trial. In addition, the right to a federal jury trial depends not only on the underlying liability but also the remedies sought. And as discussed above, the weight of federal authority establishes that no right to a jury trial exists for claims seeking only disgorgement.

misappropriation claim in that it seeks the same type of damages—namely, "expectation interest and/or reliance interest damages for breach of contract and disgorgement of profits for opportunistic breach of contract." (Doc. No. 640-2 at Ans. 10.) In addition, Wilson Wolf's expert advances the same theories of damages, unjust enrichment and "compensatory damages," as measured by Corning's actual and projected revenues and/or profits on its HYPERStack, HYPERFlask, and related products. Importantly, with respect to the "compensatory damages" calculation, Wilson Wolf again proposes a 50% disgorgement of Corning's profits. (Doc. No. 641 ¶¶ 215-218.) This calculation is premised on the theory that Wilson Wolf would have received this share of the profits based on a supposed "OEM agreement, a joint venture agreement, a license agreement, or a combination of these" that would reflect a structure that the parties would have agreed to with "the amount of lost profits damages [being the] same as the expectation damages." (*Id.* ¶ 217.)

The parties agree that breach of contract claims seeking reliance or expectation damages were historically tried at law in the English courts. *See, e.g.*, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962) ("[I]n an action to collect a debt for breach of a contract . . . , petitioner has a right to have the jury determine not only whether the contract has been breached and the extent of the damages if any but also just what the contract is."). Here, the Court previously dismissed Wilson Wolf's unjust enrichment claim with prejudice, finding that the CDA "comprehensively governs the exchange of information between the parties" and thus "there is no legal justification for Plaintiff's claim for unjust enrichment." (Doc. No. 388 at 20-21.) Even so, Wilson Wolf argues that

7

it is entitled to disgorgement of Corning's profits as a remedy for breach of contract. Specifically, Wilson Wolf submits that its requested damages reflect "lost profit" or "expectation" damages. However, upon examination of the substance of Wilson Wolf's damages analysis, it is apparent that the damage theory is not based on Wilson Wolf's own lost profits. Notably, the alleged damages are not premised on a contract entered into by the parties or any identified products or lost profits of Wilson Wolf, such that any alleged loss to Wilson Wolf could be calculated with reasonable certainty. *See Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 986 (8th Cir. 2008) (explaining that "[i]n limited circumstances, the defendant's gain may be useful in determining the plaintiff's loss," in particular when applying the plaintiff's profit margin only to the portion of the defendant's gross income that is "derived from the plaintiff's former or prospective customers"). Here, Wilson Wolf has not pointed to evidence in the record identifying any lost customers, lost sales, or lost earnings caused by the alleged breach of the CDA. Instead, Wilson Wolf premises the asserted damages on a speculative agreement to split Corning's profits 50/50. After careful review, the Court concludes Wilson Wolf does not seek damages based on its own losses, but rather seeks the equitable remedy of disgorgement. Therefore, Wilson Wolf's breach of contract claim does not give rise to a right to a jury trial. *See, e.g., Marseille Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 648 (7th Cir. 2002) ("If the only relief sought is equitable, such as an injunction or specific performance . . . , neither the party seeking that relief nor the party opposing it is entitled to a jury trial.").

### C.   Inventorship Claims

In Counts I, II, and III, Wilson Wolf alleges that three of Corning's patents should be changed to name Wilson and/or other Wilson Wolf staff as inventors pursuant to 35 U.S.C. § 256.  (Compl. ¶¶ 109-111, 113-118.)

Section 256 provides for the correction of a named inventor and reads, in part:

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section.  The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256(b).  Wilson Wolf concedes that there is no right to a jury trial for its inventorship claims standing alone but asserts that there is a right to a jury trial here because the facts underlying the inventorship claims are common to those underlying Wilson Wolf's claims for breach of contract and trade secret misappropriation.  (Doc. No. 652 at 21.)  However, because the Court has already determined that Wilson Wolf is not entitled to a jury trial on its trade secret misappropriation or breach of contract claims, Wilson Wolf's inventorship claims are similarly not entitled to a jury trial.  Therefore, the Court strikes Wilson Wolf's jury trial demand on its inventorship claims.

## CONCLUSION

The Court concludes that the remaining claims seek remedies that are equitable in nature and that the claims are not entitled to a jury trial.

**ORDER**

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Corning's Motion to Strike Plaintiffs John R. Wilson and Wilson Wolf Manufacturing Corporation's Jury Demand (Doc. No. [636]) is **GRANTED**.

Dated:  June 28, 2022                        s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge